IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-00302-01-CR-W-DW |
| ) | |
| ARTRAE D. MCFARLAND, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant McFarland's Motion to Suppress Evidence and Statements[1] (doc #21). For the reasons set forth below, it is recommended that this motion be granted in part and denied in part.

I.  INTRODUCTION

On September 3, 2013, the Grand Jury returned a one count indictment against defendant Artrae D. McFarland. The indictment charges that on April 1, 2013, defendant McFarland, having been convicted of a crime punishable by imprisonment for a term exceeding one year, possessed a firearm, to wit: a Hi-Point, Model CF, .380 caliber handgun, which had been transported in interstate commerce.

On June 25, 2014, an evidentiary hearing was held on defendant's motion to suppress. Defendant McFarland was represented by Assistant Federal Public Defender Anita L. Burns. The Government was represented by Assistant United States Attorney D. Michael Green. The

---

[1]At the hearing held on June 25, 2014, defense counsel advised the Court that defendant is no longer seeking to suppress evidence or the statement defendant made after he received Miranda warnings. Defendant is now just seeking the suppression of statements that were made at the scene of the arrest. (Tr. at 3, 32)

Government called Officer Chris Onik of the Kansas City, Missouri Police Department as a witness. The defense called no witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On April 1, 2013, at approximately 5:40 p.m., Officer Chris Onik and his partner, Officer Pedro Caraballo, pulled into a lot at 1701 Independence Avenue and heard loud music coming from a gold Buick four-door automobile. (Tr. at 4) The officers conducted a computer check of the automobile's license plate and it responded back with warrants for Artrae McFarland.[2] (Tr. at 4-5) At this point, the officers were not aware that McFarland had a felony conviction. (Tr. at 27) The officers decided to conduct a car check. (Tr. at 5)

2. The automobile had left the lot where the officers first saw it. (Tr. at 5) The officers followed the automobile and activated their emergency equipment. (Tr. at 5) The officers stopped the automobile at roughly Independence and Maple Boulevard, approximately one city block from where the officers first activated their lights. (Tr. at 5) The automobile pulled into a parking lot for a Subway restaurant. (Tr. at 6) The officers pulled in behind the automobile and conducted a car check in the lot. (Tr. at 6, 9)

3. Artrae McFarland was the only occupant of the Buick automobile. (Tr. at 7) The officers frisked McFarland and took him behind his vehicle to the front of the patrol vehicle. (Tr. at 8-9) McFarland did not have a driver's license on him. (Tr. at 25) The officers first identified who McFarland was and then informed him that he had been stopped because the license plate of his automobile responded back with traffic warrants. (Tr. at 9) Officer Onik told McFarland that just because he had warrants did not necessarily mean he was going to jail. (Tr. at 9-10) McFarland was not in handcuffs. (Tr. at 10) No officer was pointing a firearm at McFarland. (Tr. at 10)

4. Defendant McFarland mentioned a blunt roller. (Tr. at 10) Officer Onik testified that a blunt roller is an object that is used to roll cigarettes or marijuana cigarettes. (Tr. at 10) A blunt is a common street term for a marijuana cigarette. (Tr. at 10) A blunt roller by itself is not illegal. (Tr. at 10)

5. Defendant McFarland told Officer Onik that he had missed court on the 26th,

---

[2]The registration for the automobile came back to defendant McFarland's girlfriend. (Tr. at 23)

showing up on the 27th instead. (Tr. at 11) McFarland said that he had been calling the court trying to find out if he had a warrant. (Tr. at 11) Officer Onik testified that McFarland was becoming agitated and moving around constantly. (Tr. at 11) Officer Onik told McFarland that he wanted him to calm down and relax, that they were just city warrants, that it was not a big deal, and that everything was going to be okay. (Tr. at 11, 14) Officer Onik testified that he had not yet made a determination as to whether he would arrest McFarland on the warrants; he was merely trying to calm down McFarland. (Tr. at 24-25)

6. Officer Onik informed defendant McFarland that he was not under arrest and then asked McFarland if he had a problem with Onik searching his vehicle. (Tr. at 11) McFarland said, "no," and Officer Onik interpreted this to be that McFarland did not have a problem with Onik searching the vehicle. (Tr. at 11, 25, 29-30) Officer Onik then went to the vehicle to begin the search. (Tr. at 12) The time was 5:46.05. (Tr. at 12)

7. Defendant McFarland said, "no," and Officer Onik responded back to where McFarland was standing. (Tr. at 12, 25, 29) Officer Onik and McFarland had another conversation where McFarland asked Onik what would happen if there was a blunt in the car. (Tr. at 12, 29) Officer Onik then asked McFarland how much marijuana was in the car and McFarland responded like a blunt or two. (Tr. at 12-13) At this point, McFarland was not under arrest and he was not in handcuffs. (Tr. at 13) McFarland never said that he did not want the officers to search the vehicle. (Tr. at 25-26, 29)

8. At 5:46:46, Officer Onik was again getting ready to look in the vehicle when defendant McFarland stated, "Can I talk to the lead person in charge?" (Tr. at 13) Officer Onik again responded to where McFarland was standing. (Tr. at 13) Officer Onik testified that McFarland was becoming even more agitated so Officer Caraballo placed him in handcuffs. (Tr. at 14) Officer Caraballo stated, "You're becoming increasing more erratic and I don't know what you're going to do." (Tr. at 14) Officer Onik took defendant McFarland to the rear of the patrol vehicle because McFarland said that he wanted to speak with Onik in private. (Tr. at 16) Officer Onik again told McFarland that he needed to relax and that he was making a big deal out of what ultimately was nothing, just a little bit of city weed (i.e. city charge marijuana, a $500 bond) and a couple of city warrants. (Tr. at 16-17)

9. McFarland continued to display signs of agitation. (Tr. at 16) Officer Onik testified that he was beginning to believe that there was something more than two marijuana cigarettes in the vehicle. (Tr. at 15) The fact that it took defendant McFarland a whole city block before he stopped, that he pulled into a business parking lot as opposed to stopping on the street and the fact that his hands were visibly shaking were all cues which indicated that something more was going on. (Tr. at 15) Because McFarland seemed so agitated, Officer Onik asked him why was he so nervous, was there a gun in the car or something? (Tr. at 16) Officer

Onik testified that for officer safety purposes, if there was a weapon in the vehicle, he wanted to know prior to searching the vehicle. (Tr. at 17) McFarland told Officer Onik that there was a gun in the vehicle. (Tr. at 18) Officer Onik asked McFarland where it was and McFarland informed him that it was in the glove box. (Tr. at 18) Officer Onik told McFarland that he did not need to be so nervous, he was over 21 and could legally possess a firearm. (Tr. at 18) Officer Onik then asked McFarland if he had any paperwork for the gun and McFarland responded that he did not, he had bought it from a guy a couple days ago. (Tr. at 18-19) Officer Onik testified that he questioned McFarland about the gun because McFarland could have possessed the gun legally which would have necessitated a different course of action from Officer Onik than if McFarland possessed it illegally. (Tr. at 27) Officers Onik and Caraballo then responded to the vehicle and conducted a search at 5:50:42. (Tr. at 19) A Hi-Point .380 semiautomatic pistol was recovered from the vehicle. (Tr. at 20-21)

10. Officer Onik asked defendant McFarland if he had ever been arrested for a felony and McFarland responded yes for burglary out of Louisiana. (Tr. at 21) McFarland had not been given a <u>Miranda</u> warning nor had he been told that he did not have to answer any questions. (Tr. at 27)

11. The dash cam video system was not working in Officers Onik's and Caraballo's patrol vehicle. (Tr. at 6) A dash cam video (Government's Exhibit 1) from the patrol vehicle of Officers Cardona and Becchina picks up the car check beginning at 5:43:46 p.m. (Tr. at 6)

12. In addition to Officer Cardona and Becchina arriving at the scene, Detective Michael Wells joined the other officers at the scene. (Tr. at 21-22) Officer Onik testified that Detective Wells is assigned to the Violent Crimes Enforcement Squad as the admin detective and that he handles all cases that they get. (Tr. at 22) Detective Wells ran a computer check on defendant McFarland to determine if he was a convicted felon. (Tr. at 22) Detective Wells advised that McFarland was, according to the records, a convicted felon and McFarland was then placed under arrest on the charge of being a felon in possession of a firearm. (Tr. at 22) Officer Onik testified that it is standard procedure when a firearm is found pursuant to a traffic stop to run a check on the person who is believed to be in possession of the firearm. (Tr. at 22)

### III. DISCUSSION

Defendant McFarland now seeks to suppress only those statements he made at the scene which relate to the firearm and any felony arrests. (Tr. at 33) Defendant argues:

> Mr. McFarland has a constitutional privilege against self-incrimination as guaranteed by the Fifth Amendment to the United States Constitution. This

privilege also protects a person that is in custody from being coerced by the police into making any statements. Because custodial interrogation is inherently coercive, the police must advise a person of certain rights, including the right to remain silent and the right to the presence of an attorney during questioning, and obtain a valid waiver of such rights before interrogating a suspect. Miranda v. Arizona, 384 U.S. 436, 444-45 (1996). The government may not use at trial any statements made by a suspect unless the police comply with the procedural safeguards of Miranda. In Mr. McFarland's case, the officers did not advise him of his Miranda rights at the scene of the car stop even though Mr. McFarland was placed in handcuffs for his outstanding KCMO warrants. The incriminating statement by Mr. McFarland at the scene of the car stop including a statement that he had blunts and a gun in the car, that he bought the gun a few days ago from a guy, and that he had a burglary conviction from Louisiana must be suppressed as the statement was made prior to receiving a Miranda warning.

(Motion to Suppress Evidence and Statements (doc #21) at 4-5)

The government responds that defendant's statement about having marijuana in the vehicle was a voluntary non-custodial admission and that defendant's later custodial statements at the scene concerning the gun were the result of Officer Onik's questioning him about items in the vehicle which posed a risk to the officers and, as such, fell within the public safety exception to Miranda. (Government's Response in Opposition to Defendant's Motion to Suppress Evidence and Statements (doc #24) at 3-4) The government did not address the statement regarding defendant's burglary conviction in its briefing.

The Court will examine each statement that defendant seeks to suppress.

    A.    <u>Statements Regarding Blunts in the Car</u>

As set forth above, defendant McFarland was not yet in handcuffs, was moving around, and had just been informed by Officer Onik that he was not under arrest when McFarland asked Onik what would happen if there was a blunt in the car. (See Fact Nos. 5, 6 and 7, supra) Officer Onik asked defendant McFarland how much marijuana was in the car and McFarland responded like a blunt or two. (See Fact No. 7, supra)

5

"The basic rule of Miranda is that an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990). The Griffin court set out three factors which mitigate against the existence of custody at the time of questioning: (1) the suspect was informed that he was not considered under arrest; (2) the suspect possessed unrestrained freedom of movement; and (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions. Id. at 1349. All three mitigating factors were present here. Clearly, no Miranda warnings were required prior to defendant McFarland's pre-arrest statements regarding the blunts in the car since McFarland was not being interrogated while in custody when the statements were made. In fact, defendant McFarland initiated the conversation about the blunts with Officer Onik after Onik had advised McFarland that he was not under arrest. Officer Onik's follow-up question as to how much marijuana was in the car only sought the information which was necessary for Onik to respond to McFarland's question. See United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005)("An officer's request for clarification of a spontaneous statement generally does not constitute interrogation.") There is no basis for suppression of defendant's statements regarding blunts in the car.

    B.    Statements Regarding Gun in the Car

As set forth above, after Officer Onik had again moved to the car to begin his search, defendant McFarland asked to speak to the person in charge (which was Officer Onik). (See Fact No. 8, supra) While Officer Onik testified that McFarland was not yet arrested, at this time he was handcuffed by Officer Caraballo who stated, "You're becoming increasing more erratic and I don't know what you're going to do." (Id.) Because McFarland seemed so

agitated, Officer Onik asked him why was he so nervous, was there a gun in the car or something? (See Fact No. 9, supra) Defendant McFarland told Officer Onik that there was a gun in the vehicle. (Id.) Officer Onik then asked defendant McFarland where it was and McFarland responded that it was in the glove box. (Id.) Officer Onik testified that he asked these questions for officer safety purposes. (Id.)

The law is clear that there is a public safety exception to the requirement that Miranda warnings be given prior to custodial questioning when police officers ask questions reasonably prompted by a concern for the public safety, which includes protection of the police officers themselves. See United States v. Liddell, 517 F.3d 1007, 1009 (8th Cir.), cert. denied, 555 U.S. 1045 (2008). "[T]he risk of police officers being injured by the mishandling of unknown firearms … provides a sufficient public safety basis to ask a suspect who has been arrested and secured whether there are weapons … in a car … that the police are about to search." Id. at 1009-10. Officer Onik's questions were reasonably prompted by a concern for the public safety. There is no basis for suppression of defendant's statements regarding the presence and location of the gun in the car.

  C.  Statement Regarding Purchase of Gun

Officer Onik next asked defendant McFarland if he had any paperwork for the gun and McFarland responded that he did not, he had bought it from a guy a couple days ago. (See Fact No. 9, supra) Officer Onik testified that he questioned McFarland about the gun because McFarland could have possessed the gun legally which would have necessitated a different course of action from Officer Onik than if McFarland possessed it illegally. (Id.)

At this point, defendant McFarland is physically restrained and the officers know that McFarland has outstanding warrants. (See Fact Nos. 3 and 8, supra) Officer Onik has been

7

told by defendant McFarland that there is marijuana and a gun in the car. (See Fact Nos. 7 and 9, supra) Officer Onik testified that he questioned McFarland about paperwork for the gun because if McFarland possessed it legally it "would have necessitated a different course of action" than if he possessed it illegally. (See Fact No. 9, supra) Officer Onik also testified that defendant McFarland was acting as if "something more was going on" than two marijuana cigarettes in the car. (Id.) The Court finds that Officer Onik asked defendant McFarland a question that was reasonably likely to elicit an incriminating response. Miranda safeguards come into play whenever a person in custody is subjected to questioning that the police should know is reasonably likely to elicit an incriminating response from the suspect. See Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). The Court finds that although defendant McFarland had not yet been told that he was under arrest, his freedom of action had been curtailed to a degree associated with arrest[3] and the question posed to him about paperwork for the gun amounted to custodial interrogation. Contrary to the government's argument, there was no public safety basis for asking defendant about his ownership of the gun. Defendant's statement regarding his purchase of the gun must be suppressed.

D. <u>Statement Regarding Burglary Conviction</u>

Likewise, defendant McFarland's response to Officer Onik's question as to whether McFarland had ever been arrested for a felony (see Fact No. 10, supra) must be suppressed.[4] The Court finds this question to be custodial interrogation to which the Miranda safeguards

---

[3]"It is settled that the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest." United States v. Pelayo-Ruelas, 345 F.3d 589, 592 (8th Cir. 2003)(quoting Berkemer v. McCarty, 468 U.S. 420, 440 (1984)).

[4]This ruling does not prevent the government from presenting independently obtained evidence of defendant McFarland's prior felony conviction.

apply. See United States v. Hines, 2013 WL 6086151, *9 (N.D. Ga. Nov. 19, 2013)("After the gun was found, the police asked Defendant … whether he was a convicted felon. … His answers to those questions should be suppressed because they were given in response to custodial questioning without the benefit of *Miranda* warnings.")

IV. CONCLUSION

Given the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order granting in part and denying in part defendant McFarland's Motion to Suppress Evidence and Statements (doc #21). As set forth above, defendant is no longer seeking the suppression of evidence or the statement he made after he received Miranda warnings. Thus, these portions of defendant's motion should be denied as moot. As for those statements that defendant is still seeking suppression, that is the statements that were made at the scene of the arrest, the Court recommends granting suppression of defendant's statement regarding his purchase of the gun and statement regarding his burglary conviction and denying suppression of defendant's statements regarding the blunts in the car and statements regarding the presence of the gun in the car and its location.

Counsel are reminded they have fourteen days after being served a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

/s/ *Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE